# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| NVMS, LLC, | ) | CASE NO. 308-01901 |
| | ) | |
| Debtor. | ) | CHAPTER 11 |
| | ) | |
| | ) | JUDGE MARIAN F. HARRISON |
| | ) | |

_____

## MEMORANDUM OPINION
_____

This matter is before the Court upon the debtor's motion for expedited discovery and Medical Billing Partnership's (hereinafter "MBP") motion for a protective order. After a hearing, the Court held that the information sought was discoverable by the debtor and took under advisement MBP's assertion that it should be protected from having to provide the information in its native format. For the following reasons, the Court finds that the information should be provided but with certain restrictions.

## I. BACKGROUND

The debtor is a medical services company that provides, among other things, intraoperative neurophysiological monitoring and autologous transfusion during surgery.

After a surgical procedure is complete, the neurophysiologist fills out a "charge sheet," which lists the different tests run during surgery, the interpretive services provided by the off-site neurologist, and the single-use medical supplies expended during the procedure. This charge sheet is faxed to the debtor's office, where staff records the various charges into a preliminary record of accounts receivable so that the debtor will have a rough idea of funds to expect from the insurance company or Medicare. The charge sheet is then faxed to a billing company along with a "demographic sheet" containing the patient's demographic and insurance information.

In July 2000, the debtor entered into a Practice Management Services Contract with MBP to handle all of its billing. The debtor ceased doing business with MBP in February 2008, and started using Practice Resource Network, Inc. (hereinafter "PRN"). After switching to PRN, the debtor requested that MBP provide the debtor's billing data so that the debtor could determine the status of its claims. MBP refused to provide the information.

On March 5, 2008, the debtor filed its Chapter 11 petition. Soon thereafter, the debtor filed an expedited motion for turnover of the data, an expedited motion for expedited discovery for the hearing on turnover, and a motion for a Rule 2004 examination. MBP objected and filed its own motion for a protective order.

At the hearing on the discovery matters, Edward Blochowiak, a partner of MBP, testified that MBP's billing program is unique and proprietary based on MBP's user defined fields and utilization of options within the Medisoft software, a widely available medical practice management system. The information, which MBP asserts is unique to its databases and methodology, is embedded on the electronic data in its billing system, and cannot be removed from the data in its current format. MBP is concerned that if it is required to produce this proprietary information, it could be used by a competitor, including the billing company currently used by the debtor. MBP has provided the debtor with a hard copy of its claims, as well as a CD-rom with the information in an unformated text file.

Sean McCracken, the debtor's chief executive officer and part owner, testified that the debtor has its own licensed copy of Medisoft but has no intention of doing its own billing or of doing billing for others. John Holshouser, the president, chief executive officer, and part owner of PRN, testified that PRN uses its own accounts receivable, billing, and management software, Physician's Assistant™, rather than Medisoft. According to Mr. Holshouser, PRN has no interest in changing to Medisoft and would not gain any competitive advantage by receiving the information. According to Mr. Holshouser's Second Certified Statement, there is no way to translate or convert the text on the CD-rom into a useful format without "manually going through each line of text and coding or delimiting it, which would require enormous time, effort, and money." On the other side, Mr. Blochowiak testified that to provide the data in a form readable by Medisoft software without

MBP's proprietary codes would be cost prohibitive and would result in the loss of collective information in MBP's own system.

## II. **DISCUSSION**

Fed. R. Civ. P. 34(a)(1)(A) was amended in 2006 to provide that a party may serve a request:

> to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
>
> > (A) any designated documents or electronically stored information–including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations–stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

Pursuant to Fed. R. Civ. P. 34(b)(1)(C), a party "may specify the form or forms in which electronically stored information is to be produced." This is what the debtor did here. According to the Advisory Committee's Note to the 2006 Amendment, Rule 34(a) was "amended to confirm that discovery of electronically stored information stands on equal footing with discovery of paper documents. The change clarifies that Rule 34 applies to information that is fixed in a tangible form and to information that is stored in a medium from which it can be retrieved and examined."

4 - U.S. Bankruptcy Court, M.D. Tenn.

Moreover, Fed. R. Civ. P. 34(b)(2)(E)(i) provides that "[u]nless otherwise stipulated or ordered by the court . . . [a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." The Advisory Committee explains that "[i]f the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature."

Based on the pleadings and the testimony presented, the Court held that the formatted data file, as opposed to the text file, is discoverable pursuant to Rule 34. The remaining issue is whether the formatting used by MBP requires protection.

Fed. R. Civ. P. 26(c) authorizes a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). As stated in *Kerns v. Caterpillar, Inc.*, No. 3:06-cv-1113, 2008 WL 351233 (M.D. Tenn. 2008):

> This provision protects from disclosure material that would harm the disclosing party by placing it at a competitive disadvantage. ***See, e.g., Wedgewood Ltd. P'ship I v. Township of Liberty***, No. 2:04-CV-1069, 2007 WL 1796089, at *3 (S.D. Ohio June 21, 2007) (quoting ***In re Knoxville News-Sentinel Co.***, 723 F.3d 470, 474 (6th Cir. 1983)).

*Id.* at *3. In order to succeed on a request for protection:

5 - U.S. Bankruptcy Court, M.D. Tenn.

> A movant under this Rule must show that "(1) the interest for which protection is sought is an actual trade secret or other confidential business information that is protected under the rule; and (2) there is good cause for the entry of a protective order," i .e., that "disclosure will work a clearly defined and serious injury" to the movant. *Republic Servs., Inc. v. Liberty Mut. Ins. Cos.*, No. Civ. A. 03-494-KSF, 2006 WL 1635655, at *6 (E.D. Ky. June 9, 2006) (internal citations and quotation marks omitted).

*Id.* Rule 26(c) gives trial courts broad discretion in deciding when a protective order is appropriate and what degree of protection is required. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). In exercising such discretion, this Court is cognizant of the necessity of balancing the interests of both parties.

In the present case, MBP asserts that its modifications of the Medisoft software constitute a trade secret and that protection is necessary to avoid giving competitors an unfair advantage. The Court is not convinced that user choices and modifications of a commonly used software constitute trade secrets. However, the Court is cognizant of the concerns expressed by Mr. Blochowiak. Based on the testimony, it is understandable why he would be mistrustful about providing this information to the debtor. Specifically, there was proof that an employee of MBP resigned and started working for the debtor shortly thereafter. This same employee evidently left her employment at MBP with a backup disk of the debtor's billing information, and Mr. Blochowiak testified that MBP's clearinghouse software was accessed on four or five occasions from the debtor's Internet Protocol address.

On the other hand, the hard copy provided is of little use to the debtor since re-input of the data would be cost prohibitive and could potentially result in time-sensitive claims expiring before the task could be completed. Moreover, the electronic text file provided is of no value because it is the electronic fields and codes that give the text meaning. The Court agrees with Mr. Holshouser, who characterized the produced CD-rom as text rather than data.

There are no cases that address this exact factual scenario. However, the case law regarding the discovery of electronic data supports the conclusion that the debtor is entitled to the data in its Medisoft format. *See, e.g., **CP Solutions PTE, Ltd. v. Gen. Elec. Co.***, No. 3:04cv2150(JBA)(WIG), 2006 WL 1272615, at *3 (D. Conn. Feb. 6, 2006) (defendants should have attached attachments to corresponding e-mails; defendants compelled to produce documents in readable, usable format to the extent documents were created or received in readable format); ***Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L.***, No. 04 C 3 109, 2006 U.S. Dist. LEXIS 10838, at *12 (N.D. Ill. March 8, 2006) (converting electronic media to TIFF documents was insufficient; defendant ordered to produce electronic media that plaintiff designated for copying). *Cf.* ***Michigan First Credit Union v. Cumis Ins. Society, Inc.***, No. 05-74423, 2007 WL 4098213, at *2 (E.D. Mich. Nov. 16, 2007) (if relevant metadata, such as date and time of creation, did not appear in PDF copy, there would be value in producing metadata); ***The Scotts Co. LLC v. Liberty Mut. Ins. Co.***, No. 2:06-CV-

899, 2007 WL 1723509, at *4 (S.D. Ohio June 12, 2007) (court refused to decide issue of whether documents produced in hard copy form were not reasonably usable for purpose for which they were requested because parties had not fully exhausted extra-judicial efforts to resolve dispute).

Even cases decided prior to the ratification of the 2006 Amendments support this holding. *See In re Verisign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2004 WL 2445243, at *2 (N.D. Cal. Mar. 10, 2004) (Rule 34 "clearly anticipates that a defendant may be directed to produce electronic documents in electronic format"); *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 652 (D. Kansas 2005) (burden is on producing party to show that production of electronic documents with metadata or as "active file" or in their "native format" is objectionable).

While the data in its native format is discoverable, the Court has no intention of leaving MBP unprotected. *See John B. v. Goetz*, No. 3:98-0168, 2007 WL 4014015, at *3 (M.D. Tenn. Nov. 15, 2007) (state ordered to produce data in its native format without redaction of privileged information after entry of appropriate protective order). Accordingly, the Court finds that the information should be given directly to PRN to review and process the information regarding the status of the debtor's claims by using the debtor's licensed Medisoft software. While PRN can share the data with the debtor, it is not to share the electronic version with the debtor or any potential competitors. Moreover, PRN is not to use

the formatted version for the purpose of processing any claims other than the debtor's claims that are included in the produced file. Finally, PRN shall return the electronic information, without retaining an electronic copy, once all claims have been reviewed, processed, and resolved.

### III. CONCLUSION

For all of the foregoing reasons, the Court finds that the debtor's discovery motion should be granted with the protective restrictions discussed above, and that MBP's motion for protective order is denied.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**